## WOODARD *v.* SAGINAW CITY LINES, INC.

1. CARRIERS—BUS COMPANY—DUTY TO DISCHARGE PASSENGERS IN SAFE PLACE.

   Notwithstanding a bus company as a common carrier of passengers does not have the same duty as a railroad or street railway which has exclusive control over their platforms and other areas provided for embarking and disembarking passengers, nevertheless the bus company does have a duty to discharge its passengers at a reasonably safe place.

2. SAME—BUS COMPANY—SAFE PLACE FOR PASSENGERS TO ALIGHT.

   A bus company, as common carrier of passengers, which stops bus at a place where it is not reasonably safe for passengers to alight is liable to a passenger injured through a fall caused by her stepping from the bus at such unsafe place.

3. SAME—BUS COMPANY—SAFE PLACE FOR PASSENGER TO ALIGHT—QUESTION OF FACT—EVIDENCE.

   Evidence presented in nonjury action by passenger for injuries sustained when she slipped after stepping into a hole on snow-

————————

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5]  10 Am Jur, Carriers §§ 1386–1388, 1395.
   Liability of motorbus carrier to passenger injured through fall while alighting from vehicle.  9 ALR2d 938.
   Liability of motor carrier for injury or death of passenger who has alighted, caused by conditions at place of alighting.  58 ALR2d 948.
[4]  3 Am Jur, Appeal and Error § 901.

covered street as she alighted from back of bus *held*, to have presented a question of fact as to whether or not bus driver had exercised reasonable care in inviting plaintiff, a business invitee, to alight, in view of possible alternative stop which could have been made near the front entrance of bus where street was clear.

4. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF EVIDENCE.

The Supreme Court does not reverse findings of fact in a nonjury action at law, where the trial court decides upon disputed testimony unless it can be said the testimony clearly preponderates against the judgment of the lower court.

5. CARRIERS—BUS COMPANY—SAFE PLACE FOR PASSENGER TO ALIGHT —FINDING OF FACT—EVIDENCE.

Evidence presented in nonjury action by passenger of bus who was invited to leave bus by rear door *held*, sufficient to sustain finding of trial judge that bus driver had not exercised reasonable care under the circumstances in providing a reasonably safe place for plaintiff to alight.

Appeal from Saginaw; O'Neill (James E.), J. Submitted October 3, 1961. (Docket No. 2, Calendar No. 48,642.) Decided December 28, 1961.

Case by Mattie Woodard against Saginaw City Lines, Inc., for personal injuries sustained in fall by reason of bus stopping at improper place for discharge of passengers. Judgment for plaintiff. Defendant appeals. Affirmed.

*Henry G. Marsh,* for plaintiff.

*O'Keefe, Braun, Kendrick & Finkbeiner (Russell A. Schafer,* of counsel), for defendant.

KAVANAGH, J. Plaintiff sued Saginaw City Lines, Inc., to recover damages for injuries allegedly suffered on January 22, 1958, in a fall after she stepped off defendant's bus.

The case was tried in the lower court without a jury. Judgment was entered in plaintiff's favor. Defendant appeals, raising the following questions:

(1) Did plaintiff sustain the burden of proof that her injury was proximately caused by the act of defendant's driver in stopping his bus at a place which he knew or should have known to be unsafe to discharge passengers?

(2) Was plaintiff guilty of contributory negligence as a matter of law?

(3) Was the judgment of the trial court sitting without a jury against the clear preponderance of the evidence?

The following facts are pertinent to understanding the issues: Shortly prior to the date of the accident a heavy snow had fallen in the city of Saginaw. Plows had pushed the snow up along the curb line of the streets so as to clear the streets for traffic. This condition existed in a general way throughout the city. Plaintiff, a passenger in one of defendant's buses, left the bus with other riders at one of the usual bus stops on Baum street near the intersection of Genesee.

Plaintiff testified she observed there was a snowbank alongside the bus at the rear door, but that a path had been made through the snowbank to the sidewalk by prior passengers. At least 2 passengers preceded plaintiff in getting off the bus at the rear door. After leaving the bus and taking a couple of steps on this path to the sidewalk plaintiff claims she fell when her foot slipped into a hole covered with snow and ice.

Defendant's bus driver testified the particular place at which plaintiff's fall occurred was his sixth stop at that location on that day. He stated he stopped in the same position on each occasion in order to give passengers leaving and entering the bus the benefit of the paths existing in the snowbank.

He further stated he lined up the 2 paths with the front and rear doors of his bus and drove his bus as close to the snowbank as possible and parallel to the curb line, so as to avoid discharging passengers in the street proper; there was testimony the bus came so close to the snowbank it could be heard to brush against it. The bus driver testified that when he heard plaintiff had fallen, he examined the place where she claimed to have fallen and could find no hole in the snow or in the path leading from the rear door of the bus to the sidewalk.

A disinterested witness testified the snow and ice were uneven because of footsteps of people previously leaving the bus. The following testimony of this witness was in direct conflict with the testimony of defendant's bus driver:

"*Q*. Can you describe for us, if you know what the walking conditions were in the snow at the foot of the bus? * * *

"*A*. It was bad.

"*The Court*: What do you mean by 'bad'?

"*A*. Well, it was deep, and, also, there had been footprints in there."

The bus driver, in his testimony, did not deny there was ice and that the conditions were slippery, but claimed there was no hole as testified by plaintiff. He testified there was snow piled along the street from one end of the block to the other, and he categorically disputed the testimony of the disinterested witness with regard to conditions at the front of the bus. The disinterested witness testified with reference to the front entrance of the bus as follows:

"*Q*. And you had to cross that snowbank to get to the front entrance of the bus?

"*A*. No, in the front of the bus it was clear, there at the front of the bus, the door in the front, but in the back part, there was a snow drift there."

It is argued by defendant that the duty of a bus company as a common carrier of passengers is not the same as that imposed on railroads or street railways which have exclusive control over their platforms and other areas provided for embarking and disembarking passengers. With this we agree. Nevertheless, the bus company has a duty to discharge its passengers at a reasonably safe place.

This case was tried by plaintiff on the theory that defendant's bus driver breached the duty of exercising proper care in stopping the bus at a place reasonably safe for passengers to alight, particularly since there was a clear area available to the driver at the front of the bus.

In the case of *Spangler* v. *Saginaw Valley Traction Co.,* 152 Mich 405, this Court said (pp 410–412):

"But as a general rule it is the duty of the street-railroad carrier to at least exercise proper care to see that the place of alighting is safe * * * it was negligence on the part of the carrier to stop its car at the place it did stop it and invite plaintiff to alight there without in some suitable way informing her of the conditions."

The rule has been stated in 9 ALR2d 938, 946, as follows:

"While a motorbus carrier is not responsible for the condition of the street or highway where it discharges passengers, the carrier having no control over such street or highway, it is required to exercise a high degree of care, or at least reasonable care, that the point where the bus stops to permit passengers to alight is reasonably safe, and in the event of failure to exercise such care the carrier is liable to a passenger injured through a fall caused by her stepping from the bus at a spot which was not thus reasonably safe."

In view of the conflict of testimony of defendant's bus driver and the disinterested witness, a fact ques-

tion was presented to the trial court as to whether the bus driver exercised reasonable care in inviting the passenger to alight at the back of the bus and stopping the bus in that position, when a possible alternative stop could have been made near the front entrance of the bus where the street was clear.

It became a fact question for decision by the trial judge in the absence of a jury as to whether a reasonably prudent bus driver would have acted in the manner this bus driver acted under the same or similar circumstances, in view of the degree of care owed the passenger—a business invitee.

We do not reverse with reference to findings of fact in a law case where the trial court decides disputed testimony, unless it can be said the testimony clearly preponderates against the judgment of the lower court. *Insealator, Inc.,* v. *Wallace,* 357 Mich 233; *Harden* v. *Widovich,* 359 Mich 566.

There appears to be sufficient evidence in the record, if believed, to warrant the trial judge in finding for plaintiff.

The conflict in the bus driver's testimony, plaintiff's testimony, and the testimony of the disinterested witness as to the cause of plaintiff's fall creates a question of fact which apparently was resolved by the trial judge in favor of plaintiff.

In view of the above, we cannot say the judgment of the trial court, sitting without a jury, was against the clear preponderance of the evidence.

The judgment of the lower court is affirmed. Plaintiff shall have costs.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.