### BREWER *v*. CITY OF DETROIT.

1. CARRIERS—DISCHARGE OF PASSENGERS—NEGLIGENCE.

A motorbus carrier is not responsible for the condition of streets or highways where it discharges passengers since it has no control over such streets and highways, but it is required to exercise at least reasonable care, that the point where the bus stops to permit passengers to alight is reasonably safe under the circumstances.

2. SAME—PUBLIC TRANSPORTATION—NEGLIGENCE—QUESTION OF FACT.

Whether the place at which a passenger was discharged by a motorbus carrier was or was not a safe place under the circumstances is generally a question of fact.

3. SAME—PUBLIC TRANSPORTATION—NEGLIGENCE—QUESTION OF FACT.

Uncontradicted testimony of plaintiffs that street at defendant's bus stop was icy and slippery raises a question of fact as to what knowledge defendant motorbus carrier's driver should have had as to the condition of the street at the bus stop in the performance of his obligation to his passengers.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur 2d, Carriers §§ 982, 984.
  Liability of motorbus carrier to passenger injured through fall while alighting from vehicle, 9 ALR2d 938.
[2] 14 Am Jur 2d, Carriers § 984.
[3] 14 Am Jur 2d, Carriers §§ 982-984.
[4] 5 Am Jur 2d, Appeal and Error § 839; 14 Am Jur 2d, Carriers §§ 982-984.

4. SAME—PUBLIC TRANSPORTATION—NEGLIGENCE—JUDGMENTS—FIND-
INGS OF FACT—NONJURY CASE.

Review by appellate court of judgment for defendant in
nonjury action by bus passenger and her husband for in-
juries sustained in fall after alighting from defendant
carrier's motorbus requires that case be remanded to trial
court for further findings of fact and conclusions of law
where plaintiffs' uncontradicted testimony that street was icy
and slippery where passenger was discharged raised a ques-
tion of fact as to what knowledge defendant's unidentified
driver should have had the condition of the place where
he stopped and trial court stated that there was no evidence
"whatsoever" that driver should have known that place was
slippery or unsafe.

Appeal from Wayne, Kaufman (Charles), J.
Submitted Division 1 February 8, 1968, at Detroit.
(Docket No. 2,239.) Decided May 28, 1968.

Complaint by Stella Ales, continued by Darrin
Brewer, as administrator upon her death, and
Thomas Ales against the City of Detroit, Depart-
ment of Street Railways, for injuries suffered by
Stella Ales in a fall immediately after alighting
from defendant's motorbus. Judgment for defend-
ant. Plaintiffs appeal. Remanded for further
proceedings.

*Leven, Logan & Neenan,* for plaintiffs.

*Manuel Zechman,* General Counsel, *Michael F.
Peters* and *Benjamin Kinzer,* Attorneys, for defend-
ant.

HOLBROOK, J. On January 27, 1965, shortly after
2 p.m., Stella Ales, age 78, alighted from a south-
bound Department of Street Railways bus at the
southwest corner of Warren and St. Jean in the
city of Detroit, a regular bus stop. Her testimony

indicated that the bus came to a complete stop, she stepped off onto the curb, turned around, and took a step back from the traffic. After the bus pulled away and the traffic light changed, she started to cross St. Jean but fell down before leaving the curb, injuring her right hip. Mrs. Ales testified that the regular bus stop area where she got off "was all ice" and "it was all slippery." Her husband, who examined the bus stop area the same afternoon testified that "it was practically all ice." Defendant produced 4 bus drivers who said they drove the route during the time in question. They stated that they did not remember Mrs. Ales nor see her fall. The trial court, as trier of the facts, entered a judgment of no cause of action in favor of defendant from which judgment Darrin Brewer, the administrator of Mrs. Ales' estate, and Thomas Ales have appealed.

For purposes of this review, we pose the following issue: *Were the findings of fact and conclusions of law made by the lower court under GCR 1963, 517, proper and sufficient?*

The written opinion of the trial judge quotes from 9 ALR2d 938, § 6, p 946 in stating the duty imposed upon motorbus carriers to discharge passengers at a reasonably safe place:

" 'While a motorbus carrier is not responsible for the condition of the street or highway where it discharges passengers, the carrier having no control over such street or highway, it is required to exercise a high degree of care, or at least reasonable care, that the point where the bus stops to permit passengers to alight is reasonably safe, and in the event of failure to exercise such care the carrier is liable to a passenger injured through a fall caused by her stepping from the bus at a spot which was not thus reasonably safe.' "

Also, see *Woodard* v. *Saginaw City Lines, Inc.* (1961), 365 Mich 273; *Spangler* v. *Saginaw Valley Traction Co.* (1908), 152 Mich 405.

The recent case of *Jaxon* v. *City of Detroit* (1967), 379 Mich 405, states the duty imposed on motorbus carriers in the following language (p 410):

"The general rule is that a carrier is obligated to bring his conveyance to a stop so as to discharge its passengers in a reasonably safe place. In general, whether the place at which a given passenger was discharged was or was not a safe place under the circumstances is a question of fact for the jury."

The standard to be used in determining whether or not the motorbus operator has breached the duty imposed also appears in *Jaxon, supra,* as follows (p 411):

"It was for the jury to determine whether the defendant's bus driver was acting in the premises as a reasonably prudent man under the same or similar circumstances. While it cannot be said that the driver was guilty of negligence as a matter of law, neither can it be said that he was free from negligence as a matter of law. It was a question of fact."

In applying the standard set out in *Jaxon, supra,* to the facts present in the instant case, it would be necessary to determine as a matter of fact whether the unidentified bus driver acted "in the premises as a reasonably prudent man under the same or similar circumstances"—*viz.,* icy, slippery conditions present at the bus stop as testified to by Mr. and Mrs. Ales, testimony which was in no way contradicted or disputed. The determination would include a consideration of what defendant's bus driver should have known as to the condition of the bus stop in the performance of the obligation owed

passengers.* It is clear that the phrase "should have known" is all important to a proper decision in this case. 1 Restatement, Second, Torts § 12(2), pp 19, 20 states as follows:

"The words 'should know' are used throughout the restatement of this subject to denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists."

The written opinion of the lower court states in part as follows:

"There is no evidence whatsoever that the defendant's bus driver either knew or should have known that the very spot at the regular bus stop where the plaintiff was discharged was slippery or unsafe for pedestrians.  *  *  *

"While this court is satisfied that the defendant owes a high degree of care, or at least reasonable care, as the aforementioned ALR citation would indicate, it is the feeling of this court that it is still necessary that the plaintiff prove by a fair preponderance of the evidence wherein the defendant breached its duty to the plaintiff. It would appear to this court that it would be necessary for the plaintiff to show that the bus driver either knew or should have known the condition of the spot wherein the plaintiff was discharged, and that he either knew or should have known that it constituted an unreasonable hazard to passengers alighting."

The conclusion of the lower court that "there is no evidence whatsoever" fails to take into account the uncontradicted and undisputed testimony of Mr. and Mrs. Ales as to the condition of the bus stop.

---

* Because defendant's bus driver was not identified, it would be impossible to determine what he actually knew.  *Cf. Woodard* v. *Saginaw City Lines, Inc., supra.*

We find their testimony to raise a question of fact as to what knowledge defendant's bus driver should have had on applying the standard set out in *Jaxon,* *supra.* In the absence of a finding by the trier of facts on the essential questions of fact presented, further review by this Court is impossible.

Other issues presented by appellants need not be discussed in view of this determination.

For the reason stated, the case is remanded for further findings of fact and conclusions of law by the trier of facts not inconsistent with this opinion. Costs to appellants.

BURNS and PETERSON, JJ., concurred.

