*391
 
 Zimmerman, J.
 

 To establish actionable negligence it is fundamental that the one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to obsérve such duty, and an injury resulting proximately therefrom.
 

 In accordance with the decided weight of authority, this court is committed to the proposition that a street railway company owes no duty to a passenger to warn him, upon leaving a street car at a regular ■ stop, of the approach of an automobile, and its failure to do so will not render the company liable for injuries occasioned to the passenger in being struck by such automobile after he has alighted from the street car in safety. And it makes no difference that the passenger is let off on the side of a street where traffic is moving in opposite directions, due to a barricade on the other side, if the railway company is not responsible for such barricade, and the condition is not inherently dangerous.
 
 Reining, Admx.,
 
 v.
 
 Northern Ohio Traction &\Light Co.
 
 (1923), 107 Ohio St., 528, 140 N. E., 84;
 
 Cleveland Ry. Co.
 
 v.
 
 Karbole
 
 (1932), 125 Ohio St., 467, 181 N. E., 889; 6 Ohio Jurisprudence, 966, Section 318; 38 Ohio Jurisprudence, 163, Section 703.
 

 Each of the above-cited cases presents a factual situation in which the passenger had reached the street in safety and was thereafter struck by an approaching automobile. Should the rule be otherwise as to a passenger who is in the act of alighting from a street car and has not yet reached the street in safety? There being no sufficient reason for differentiation, an appreciable majority of the cases have answered this question in the negative.
 

 Therefore, the general rule is that a street railway company is not liable for injuries inflicted by a motor vehicle to a passenger who has alighted safely from a street car onto the street, or who is injured by a mov
 
 *392
 
 ing motor vehicle while in the act of alighting from the street car, because there is no obligation to give warning of such hazards.
 
 Oddy v. West End St. Ry. Co.
 
 (1901), 178 Mass., 341, 59 N. E., 1026, 86 Am. St. Rep., 482;
 
 Chesley, Admr.,
 
 v.
 
 Waterloo, C. E. & N. Rd. Co.
 
 (1920), 188 Ia., 1004, 176 N. W., 961, 12 A. L. R., 1366, and annotation at page 1371;
 
 Jacobson, Admr.,
 
 v.
 
 Omaha & Council Bluffs Street Ry. Co.
 
 (1922), 109 Neb., 356, 191 N. W., 327, 31 A. L. R., 563, and annotation at page 572;
 
 Ruddy
 
 v.
 
 Ingebret
 
 (1925), 164 Minn., 40, 204 N. W., 630, 44 A. L. R., 159, and annotation at page 162;
 
 Louisville Ry. Co.
 
 v.
 
 Saxton
 
 (1927), 221 Ky., 427, 298 S.
 
 W.,
 
 1105;
 
 Terre Haute, I. & E. Traction Co.
 
 v.
 
 Evans
 
 (1928), 87 Ind. App., 324, 161 N. E., 671;
 
 Downs
 
 v.
 
 Northern States Power Co.
 
 (1930), 200 Wis., 401, 228 N. W., 471;
 
 Lacks
 
 v.
 
 Wells
 
 (1931), 329 Mo., 327, 44 S. W. (2d.), 154;
 
 Fox
 
 v.
 
 Minneapolis St. Ry. Co.
 
 (1933), 190 Minn., 343, 251 N. W., 916;
 
 Trimboli, Admx.,
 
 v.
 
 Public Service Co-Ordinated Transport
 
 (1933), 111 N. J. L., 481, 168 A., 572;
 
 Wittkower
 
 v.
 
 Dallas Ry. & Terminal Co.
 
 (1934), (Tex. Civ. App.), 73 S. W. (2d), 867; 10 Corpus Juris, 910.
 

 The substance of these holdings is that a street railway company is not an insurer of the safety of its passengers; that such company must necessarily discharge its passengers into the street; that the employees on the street car owe no duty of warning a departing passenger against the dangers of street traffic over which they have no control; that it is exclusively within the power of the passenger to fix the moment when he shall alight from the car; that the hazards of street traffic are as obvious to the passenger as to the employees of the company;' that the responsibility of the company should not be extended beyond its practical control, and that since the railway company has no connection with vehicular traffic in the street, the failure of its employees to warn an alight
 
 *393
 
 ing passenger of the danger from such source has no causal relation to the passenger’s injury therefrom, the passenger having the same opportunity as the employees, or a better opportunity to survey the surroundings and act for his own protection. Exceptions may occur in the case of a child, an aged person, one under apparent disabilities or where other extraordinary situations may exist.
 

 An apt statement of the prevailing rule and some of the supporting reasons therefor is contained in
 
 Moen
 
 v.
 
 Madison Rys. Co.
 
 (1932), 208 Wis., - 381, 385, 243 N. W., 503, 504, where it is said :
 

 “The passenger who is alighting has the same opportunity as the motorman, and perhaps a better opportunity, to guard against the common dangers involved in entering the traffic zone. * * * ^
 

 “There is ordinarily no negligence as to the alighting passenger because there is no duty to warn him or to protect him against the perils necessarily involved in leaving a street car. The absence of a duty eliminates all questions of negligence because it removes the foundation upon which negligence rests. * * *
 

 “The passenger who is alighting has as full an opportunity to see the dangers of leaving the street car, and of guarding against them, as has the motorman. He is leaving , the charge of the motorman and the protection of the street car, and the hazards to which he is subjected in alighting are neither created by nor under the control of the motorman.”
 

 Representative of the minority view is the case of
 
 Wood
 
 v.
 
 North Carolina Pub. Service Corp.
 
 (1917), 174 N. C., 697, 94 S. E., 459, 1 A. L. R., 942, holding that a street railway company owes to a passenger about to alight from its car a high degree of care to. protect him from and warn him of danger from vehicles that may be passing in the street, and to see that he alights safely. See, also,
 
 Loggins
 
 v,
 
 Southern
 
 
 *394
 

 Public Utilities Co.
 
 (1921), 181 N. C., 221, 106 S. E., 822;
 
 Fuchs
 
 v.
 
 Dallas Ry. & Terminal Co.
 
 (1929), (Tex. Civ. App.), 18 S. W. (2d.), 854;
 
 Gulfport & Miss. Coast Traction Co.
 
 v.
 
 Raymond
 
 (1930), 157 Miss., 439, 128 So., 327.
 

 The minority decisions appear to proceed on the theory that since it is the duty of a street car company to use the highest degree of care to provide its passengers a reasonably safe place to alight (38 Ohio Jurisprudence, 160, Section 701), such duty is breached when the passenger is discharged into the path of a moving motor vehicle on the street. But, as has been pointed out in a number of cases, the duty of the carrier to afford its passengers a safe landing place extends to conditions within its control and does not apply to independent agencies operating in the street, over which it has no control, such as an oncoming automobile.
 
 Jacobson, Admr.,
 
 v.
 
 Omaha & Council Bluffs Street Ry. Co., supra; Hammett
 
 v.
 
 Birmingham Ry., Light & Power Co.
 
 (1918), 202 Ala., 521, 81 So., 22, 24;
 
 St. John, Admr.,
 
 v.
 
 Connecticut Co.
 
 (1925), 103 Conn., 641, 131 A., 396, 397; 38 Ohio Jurisprudence, 163, Section 703.
 

 “ ‘A safe place to alight’ does not mean a place where there are no approaching automobiles upon the street. Were such a rule adopted, it would be quite impossible to stop at any place under ordinary traffic conditions in our cities.”
 
 Fitzgerald
 
 v.
 
 Des Moines City Ry. Co.
 
 (1926), 201 Ia., 1302, 207 N. W., 602, 605.
 

 Counsel for appellee argues with much earnestness that the peculiar facts of the instant case remove it from the operation of the general rule. He maintains that when appellee boarded the street car and asked the conductor the nearest stop to Inglewood road and later asked him if such stop was being reached, he should have recognized and appreciated her ignorance of the unusual traffic conditions prevalent on the north
 
 *395
 
 side of Mayfield road, and in the proper performance of his duty was required to warn her of vehicles coming from the west. If the validity of such an argument were conceded, it is not appealing here. While appellee’s inquiries and actions were no doubt adequate to advise the conductor that she was not cognizant of the regular street car stops, they were not enough to convey more, unless the qualities and attributes of a mind reader should be ascribed to the conductor. In other words, appellant cannot be charged with accountability for appellee’s lack of knowledge hot imparted to it.
 

 It is a commonly accepted fact that even though one may not be familiar with the names or exact locations of intersecting or connecting streets, he may at the same time be thoroughly acquainted with a main thoroughfare. Furthermore there was nothing about the physical appearance of appellee to mark her as an object of special concern. The record suggests she was a normal young woman approximately twenty-five years of age, in good health and in the possession of all her faculties. And there was' nothing to prevent her from observing the general conditions on Mayfield road during her ride on the car.
 

 As to the motorman in the front of the car, the evidence indicates he was engaged in the visible occupation of bringing the car to a stationary position at the regular Yellowstone road stop, while the Grimm automobile was being driven toward him at a speed of twenty-five miles per hour. Irrespective of the applicability of the pleaded ordinances of the city of Cleveland Heights covering the conduct of the driver of a vehicle in relation to a street car which has stopped to take on or let off passengers, the motorman would have been warranted in anticipating that the operator of the Grimm automobile would exercise reasonable
 
 *396
 
 care in attempting to pass the street car under the apparent circumstances.
 

 So, construing appellee’s evidence most strongly in her favor, we are unable to discover that the conductor or motorman violated or disregarded any duty toward her they were obligated to perform.
 

 The cases of
 
 Mahoning & Shenango Ry. & Light Co.
 
 v.
 
 Leedy
 
 (1922), 104 Ohio St., 487, 136 N. E., 198, and
 
 Cleveland Rd. Co.
 
 v.
 
 Sebesta
 
 (1929), 121 Ohio St., 26, 166 N. E., 898, are not controlling in the case at bar. The
 
 Leedy case
 
 contemplates a factual setting where the railway company itself has created a situation of danger — has engaged in affirmative conduct which is a direct contributing cause of the passenger’s injury. Here, the whole gravamen of appellee’s complaint is that appellant might have saved her from harm at the hands of a third person or persons — a failure to act. The
 
 Sebesta case
 
 deals primarily with the subject of contributory negligence.
 

 We have purposely refrained from discussing the question of contributory negligence, and expressly disclaim the intention of signifying any views thereon. This decision rests solely on the ground that appellee’s evidence failed to establish any breach of duty owed her by appellant.
 

 Accordingly, it becomes necessary to reverse the judgment of the Court of Appeals and affirm that of the Court of Common Pleas.
 

 Judgment reversed.
 

 Weygandt, C. J., Jones and Matthias, JJ., concur.